IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABM ENGINEERING SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05 C 7090 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| THOMAS THOMPSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, ABM Engineering Services, filed a five-count complaint against Defendants, Thomas Thompson, MWDM Holding, Inc., a/k/a MWDM, Inc., Data-Guard of Texas, Inc., World Paper Storage, Inc., Information Protection Solutions of America, Inc., Information Protection Solutions of Texas, Inc., Canal Street Self Storage, Tri County International, Inc., and Thompson's Motor Service, Inc., d/b/a Data-Guard, Inc. Defendants now move this Court to dismiss Count V of Plaintiff's Complaint and all counts against Defendant Thompson. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow Defendants' motion is granted in part and denied in part.

### I. Background

Plaintiff is a California corporation authorized to do business in Illinois. Plaintiff provides technical service personnel and full service facility maintenance solutions. (Pl.'s Compl. at 1.) Defendant MWDM is an Illinois corporation doing business in Illinois and Texas.

Defendant Thompson is an Illinois resident and the President of MWDM. (Id. at 1-2.) Plaintiff alleges that the remaining Defendants are subsidiaries of MWDM and that Defendant Thompson is the President of all of the subsidiaries. (Id. at 2-3.)

On December 1, 2003, Plaintiff entered into a Payroll Service Agreement with MWDM and its "subsidiaries." (Id., Ex. A.) Under the Agreement, Plaintiff promised to provide service employees to "MWDM and subsidiaries" and "MWDM and subsidiaries" promised to compensate Plaintiff for the wages, salaries, bonuses and benefits Plaintiff paid to the employees plus, *inter alia*, taxes, insurance, and a payroll service fee. (Id. at 5 and Ex. A.) Plaintiff provided employees under the Agreement from January 3, 2004 until November 19, 2005. (Id. at 5.) According to Plaintiff, each of the Defendants benefitted from the services performed by Plaintiff's employees and each paid at least one invoice under the Agreement. (Id. at 5 and Ex. B.)

Plaintiff alleges that, beginning in December 2004, Defendants began missing payments due under the Agreement. When the frequency of Defendants' missed payments increased, Plaintiff questioned Defendants about their failure to pay. According to Plaintiff, in a May 2005 conversation regarding missed payments, Defendant Thompson informed Plaintiff that the Defendants were selling certain real estate and would make a lump sum payment to Plaintiff out of the proceeds of the sale. (Id. at 10.) Encouraged by this conversation, Plaintiff continued to provide Defendants with employees under the Agreement. Ultimately, Plaintiff did not receive any proceeds from the real estate sale and, on November 19, 2005, terminated services under the Agreement. On December 16, 2005, Plaintiff filed its five-count complaint against Defendants alleging (1) breach of contract (Count I against all Defendants), (2) unjust enrichment (Count II

pled in the alternative against all Defendants), (3) account stated (Count III against all Defendants), (4) breach of fiduciary duty (Count IV against Defendant Thompson only), and (5) fraud (Count V against all Defendants).

## II. Discussion

Defendants move to dismiss Count V of Plaintiff's Complaint and all counts against Defendant Thompson. When considering a motion to dismiss, all well-pleaded allegations of Plaintiff's Complaint must be accepted as true, *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004), and any ambiguities in the Complaint must be construed in Plaintiff's favor. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005). Plaintiff's Complaint need not allege all, or any, of the facts entailed by the claim; Plaintiff can plead conclusions. Fed. R. Civ. P. 8(a). *See also Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000). Under Rule 9(b) of the Federal Rules of Civil Procedure, however, in all averments of fraud, the circumstances must be stated with particularity. Fed. R. Civ. P. 9(b). *See also Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

### A. Count V - Allegations of Fraud

Plaintiff alleges that, in May 2005, Defendant Thompson fraudulently induced Plaintiff to continue providing services under the Agreement by promising to pay Plaintiff all monies owed with the proceeds of a real estate sale. According to the allegation, at the time that Defendant Thompson made this promise he knew (1) Defendants had no intention of paying Plaintiff,

(2) Defendants were unable to pay Plaintiff under the Agreement, and (3) Defendants could manipulate their finances to prevent Plaintiff from obtaining payment under the Agreement.[1] (Pl.'s Compl. at 11.) Defendants argue that Plaintiff's allegations do not rise to the level of fraud nor promissory fraud.

In order to state a claim for fraud, Plaintiff must allege with particularity (1) that Defendant Thompson made an untrue statement of material fact, (2) that Defendant Thompson knew or believed the statement to be false, (3) that the statement was made to induce Plaintiff to act, and (4) that Plaintiff acted in justifiable reliance upon the statement. *HPI Health Care Servs. Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 681 (Ill. 1989); *Mitchell v. Norman James Constr. Co., Inc.*, 684 N.E.2d 872, 883 (Ill. App. Ct. 1997). However, a misrepresentation of intention to perform future conduct, even if made without a present intention to perform, is not actionable unless it is part of a pattern of fraudulent acts. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999); *HPI*, 545 N.E.2d at 682. Allegations of a pattern of broken promises and deceptions or a particularly egregious broken promise provide an indication of such a scheme to defraud. *Bors v. Duberstein*, No. 03 C 4636, 2004 WL 1588271, at *5 (N.D. Ill. July 15, 2004) citing *J.H. Desnick v. Am. Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Such claims of promissory fraud are disfavored in Illinois, as they are easy to allege and difficult to prove or disprove. *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992).

---

[1] Despite this apparent reference to alter-egos and manipulation of finances by multiple Defendants, at oral argument Plaintiff made clear that Count V is based on Defendant Thompson's representations regarding a real estate deal only, and not fraud by way of disregard of corporate formalities.

In *LeDonne v. AXA Equitable Life Ins. Co.*, plaintiff filed a promissory fraud claim based on defendant's breach of an oral promise (made on two occasions) to pay plaintiff benefits if disability ever prevented him from operating his store. 411 F. Supp. 2d 957, 962 (N.D. Ill. 2006). The *LeDonne* Court, after a survey of Illinois and Seventh Circuit case law, found alleged schemes that rise to the level of promissory fraud include (1) an elaborate artifice of fraud or a particularly egregious deception,[2] (2) a complicated deception, or one that involves numerous misrepresentations,[3] and (3) a series of misrepresentations designed to induce plaintiff to enter into a contract.[4] *Id.* at 960-63. The *LeDonne* Court ultimately dismissed plaintiff's claim because he did not allege that defendant engaged in other acts of trickery compounding the initial misrepresentation, nor that defendant perpetrated fraud on a regular basis. *Id.* at 963. Furthermore, the alleged acts in *LeDonne* did not amount to a series of misrepresentations, nor an elaborate artifice of fraud. *Id.*

In the case at bar, as in *LeDonne*, Plaintiff merely alleges a violation of an oral promise to pay outstanding invoices. Specifically, Plaintiff was led to believe that it would receive funds

---

[2] *See, e.g., Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 964 (N.D. Ill. 2000) (insurance company's nationwide scheme to maintain or increase premium income by encouraging its agents to engage in fraudulent sales practices).

[3] *See, e.g., Wachovia Secs. LLC v. Neuhauser*, No. 04 C 3082, 2004 WL 2526390, at *9-10 (N.D. Ill. Nov. 5, 2004) (defendant made false statement statements in SEC filings, promised to engage in only legal transactions while intending to violate securities laws, and misused margin accounts), and *Sommer v. United Sav. Life Ins. Co.*, 471 N.E.2d 606, 612 (Ill. App. Ct. 1984) (defendant repeatedly deceived plaintiffs about their existing and potential life insurance costs over the course of fourteen months).

[4] *See, e.g., Steadfast Ins. Co., Inc. v. Auto Mktg. Network, Inc.*, 2 F. Supp. 2d 1058, 1060-61 (N.D. Ill. 1998) (insured lender and its parent corporation misrepresented their intent to screen applications, minimize plaintiff's liability, maintain certain standards in loan portfolios and make reasonable efforts before filing claims, among other fraudulent activities).

once Defendants' real estate sale occurred so Plaintiff continued to provide employees per the Agreement. When the real estate deal did not produce payment to Plaintiff, Plaintiff filed this lawsuit. Plaintiff's allegations do not include other acts of trickery compounding the initial misrepresentations,[5] nor the suggestion that Defendants perpetrated fraud on a regular basis. Furthermore, the alleged acts do not amount to a series of misrepresentations, nor an elaborate artifice of fraud. Plaintiff has not alleged facts that rise to the level of promissory fraud in the Seventh Circuit or Illinois so the Court dismisses Plaintiff's Count V against all Defendants. *See id.* at 962.

Plaintiff cites to *Aprile Seafreight S.P.A. v. Global Freight, Inc.*, No. 05 C 4850, 2005 WL 3436407 (N.D. Ill. Dec. 12, 2005), *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3050610 (N.D. Ill. Nov. 8, 2005), and *Mitchell v. Norman James Constr. Co., Inc.*, 684 N.E.2d 872 (Ill. App. Ct. 1997), and argues that Defendant Thompson's actions may amount to a scheme or pattern of broken promises and deceptions and constitute promissory fraud. Plaintiff's case law is not persuasive.

In *Aprile*, plaintiff alleged that defendant made untrue representations in order to induce plaintiff to continue doing business. 2005 WL 3436407, at *2. Defendant claimed that plaintiff failed to plead its fraud with the level of specificity required under Rule 9(b). *Id.* The *Aprile* Court found that plaintiff's complaint and affidavits described meetings and telephone

---

[5] Plaintiff's Response to Defendants' Motion to Dismiss included a declaration from James R. Oates, Plaintiff's Vice President/Regional Manager, in which Mr. Oates describes the events surrounding Defendant Thompson's offer to pay outstanding invoices with the proceeds of a real estate sale and suggests that Defendant Thompson changed the terms of the deal in mid-to-late 2005. The Court struck the Oates Declaration from Plaintiff's Response in open court on April 27, 2006, but notes that the content of the declaration would not change the Court's decision in this case.

conversations in late-2004 and the first few months of 2005 with sufficient particularity to satisfy Rule 9(b). *Id.* Thus, the *Aprile* Court focused on Rule 9(b)'s heightened pleading standard but not the sufficiency of the alleged scheme itself.

*U.S. ex rel. Tyson* involved a claim under the False Claims Act ("FCA"), which covers anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). Ruling in the context of the FCA, the *U.S. ex rel. Tyson* Court found (1) plaintiffs sufficiently pled the "specific objective manifestations" tending to show that defendants intended to engage in a scheme to defraud the government, and (2) the alleged misrepresentations upon which plaintiffs based their fraudulent inducement claims were not limited to statements concerning future conduct. 2005 WL 3050610, at *4. Rather, the alleged misrepresentations also stemmed from purportedly false statements made previously by defendants in the form of certifications submitted on a quarterly basis. *Id.* Unlike *US ex rel. Tyson*, the case at bar does not involve the FCA, nor specific allegations of ordinary, as well as promissory, fraud.

Finally, in *Mitchell*, plaintiff alleged that defendant contractor did not build in accordance with the architect's plans, intentionally concealed his defective work and deliberately failed to arrange for required village inspections in order to induce plaintiff to enter into the contract and make periodic payments under the contract. 684 N.E.2d at 883. Based on these allegations, the *Mitchell* Court found that plaintiff sufficiently alleged a scheme or pattern of broken promises that could constitute promissory fraud. *Id.* Unlike *Mitchell*, in the case at bar, Plaintiff does not describe an elaborate scheme of trickery and a series of misrepresentations, but rather a broken promise to pay outstanding invoices.

## B. All Claims Against Defendant Thompson

Defendants move to dismiss Counts I through IV against Defendant Thompson on the grounds that Plaintiff fails to sufficiently allege any claims against him. Specifically, Defendants argue that (1) Plaintiff has not pled sufficient facts to allow this Court to pierce the corporate veil, and (2) Plaintiff has not, and cannot, plead the basic elements of breach of fiduciary duty. When considering the sufficiency of Plaintiff's non-fraud claims, i.e., Counts I through IV, the Court's inquiry is controlled by Rule 8 of the Federal Rules of Civil Procedure.[6] As discussed above, Rule 8 requires Plaintiff to give a short and plain statement of the claim showing that it is entitled to relief and does not require that Plaintiff allege the specific factual bases for its alter-ego claim. *See U.S. ex rel. Tyson*, 2005 WL 3050610, at *5; *Manuf. Life. Ins. Co. v. 1 Animation Network, Inc.*, No. 4 C 8105, 2005 WL 1323421, at *1 (N.D. Ill. May 26, 2005). The issue on a motion to dismiss is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. It may appear on the face of the pleadings that a recovery is unlikely, but that is not the test. *Liberty Mut. Fire Ins. Co. v. Reimer Exp. Enters., Ltd.*, 82 F. Supp. 2d 887, 892 (N.D. Ill. 2000) (internal quotations omitted).

---

[6] In their reply brief, Defendants state "because Plaintiff is seeking to pierce the corporate veil and hold Mr. Thompson liable for fraud, Plaintiff must also meet the heightened pleading standards of Rule 9(b)." (Defs.' Reply at 3.) Defendants also cite to several state and federal cases that apply a heightened pleading standard and reject conclusory statements. Rule 9(b) and heightened pleading standards control when fraud is alleged. In Plaintiff's Sur-Reply and at oral argument, Plaintiff made clear that the fraud allegations leveled at Defendant Thompson in Count V were based on his personal actions and were separate and distinct from Plaintiff's alter-ego theories. (Pl.'s Sur-Reply at 3.) Accordingly, Rule 8 and not Rule 9(b) governs Counts I through IV and the Court's veil piercing analysis.

1. <u>Piercing the Corporate Veil</u>

Defendant Thompson was not a party to the Agreement so Plaintiff's Counts I, II, and III may proceed directly against Defendant Thompson only if Plaintiff's pleadings are sufficient to allow this Court to pierce Defendants' corporate veil. To pierce Defendants' veil, Plaintiff alleges that (1) that the individuality of the Defendant corporations has ceased and the observance of the fiction of separate existences would sanction fraud, (2) Defendant Thompson is either President or Director of each Defendant corporation and exercised complete control over all Defendants for his personal use and gain (including their dealings with Plaintiff), such that Defendants had no separate mind, will, or existence of their own, (3) Defendant Thompson is the majority shareholder of each operating Defendant corporation, (4) Defendants share an address and phone number, (5) all Defendants used Plaintiff's employees for their own benefit and were unjustly enriched by receiving the employees' services without making any restitution for the value of the same, (6) funds were improperly moved between Defendants to avoid repaying creditors, including Plaintiff. (Pl.'s Compl. at 6-8, 10.)

This Court may pierce the corporate veil where the corporation at issue is merely the alter-ego or business conduit of the governing or dominant personality. *See Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1390 (7th Cir. 1994). In order to pierce the corporate veil under Illinois law, Plaintiff must demonstrate (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) circumstances exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *See id.* at 1388-89; *Aprile*, 2005 WL 3436407, at *1; *Typographics Plus, Inc. v. LM. Estrada & Co., Inc.*, No. 98 C 886, 2000 WL

1006572, at * 4 (N.D. Ill. July 19, 2000). To determine whether there is sufficient unity of interest and ownership between Defendant Thompson and Defendant corporations to warrant piercing the corporate veil, the Court looks to several factors: (1) inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation at the time; (4) nonfunctioning of other officers or directors; (5) absence of corporate records; and (6) whether the corporation is a mere facade for the operation of the dominant stakeholders. *Typographics Plus, Inc.*, 2000 WL 1006572, at *4.

Plaintiff's allegations, if taken as true, indicate that certain Defendants were undercapitalized, that Defendants failed to observe corporate formalities, and that Defendant corporations were completely dominated by Defendant Thompson and served as a mere facade for his personal business endeavors. *See Aprile*, 2005 WL 3436407, at *1. Furthermore, Plaintiff's allegations, if taken as true, also indicate that Defendants were unjustly enriched such that adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences. *See Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993). Because Plaintiff's allegations are sufficient and put Defendants on notice as to the claims against them, the Court will not dismiss Plaintiff's veil piercing arguments, nor Counts I, II, and III against Defendant Thompson, at this time.

2. Breach of Fiduciary Duty

Defendants argue that Plaintiff's Count IV fails to state a claim for breach of fiduciary duty. According to Defendants, Plaintiff's Complaint is devoid of any allegations with respect to insolvency of any of the Defendant entities at the time the complained of transfer of monies was

purportedly made. Defendants also cite *In re Xonics, Inc.*, 99 B.R. 870 (Bkrtcy. N.D. Ill. 1989), for the proposition that Plaintiff must allege that Defendant Thompson's actions were of a venal or corruptible nature in order to plead all the elements of a breach of fiduciary duty claim. (Defs.' Mem. at 6-7.)

For claims of breach of fiduciary duty, a corporate officer owes a fiduciary duty only to the corporation and its shareholders while the company remains solvent; once a company becomes insolvent, however, the assets of the corporation must be regarded as a trust fund for the payment of all its creditors and the officers occupy the position of trustees and fiduciaries. *LaSalle Bank Nat'l Ass'n v. Doctors Hosp. of Hyde Park, Inc.*, No. 04 C 4319, 2005 WL 1766370, at *16 (N.D. Ill. July 21, 2005) (internal quotations omitted).

In support of its breach of fiduciary duty claim, Plaintiff alleges the following:

46. Upon information and belief, Thompson is either the President or Director of each of the operating Defendants.

\* \* \*

66. [Plaintiff] realleges the allegations set forth in Paragraphs 1 through 50, and incorporates them herein by reference.

67. Under Illinois law, when a corporation nears insolvency, or is insolvent, the directors and officers of the corporation owe a fiduciary duty to the creditors of that corporation superior to that owed to the shareholders.

68. On information and belief, Defendant Thompson breached his fiduciary duty to the creditors of the operating Defendants, including [Plaintiff], by distributing assets and income without retaining sufficient funds to satisfy their payroll debt to [Plaintiff].

69. Upon information and belief, such funds were used, *inter alia*, to pay salaries, to make loans, to pay bonuses to director(s) and officer(s) of the operating Defendants, and/or to otherwise transfer funds to the Defendants.

(Pl.'s Compl. at 6, 9-10.)

Plaintiff's allegations, if taken as true, indicate that Defendant Thompson improperly used assets of an insolvent Defendant corporation, in violation of his fiduciary duties. Plaintiff is not required to say any magical words in order to give Defendants notice of its claims and Plaintiff's references to insolvent corporations and corporations that cannot satisfy their payroll debts will clearly suffice. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("At [the pleading] stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.").

Finally, Plaintiff is not required to allege that Defendant Thompson's actions were of a venal or corruptible nature. In *In re Xonics*, a bankruptcy court dismissed plaintiffs' claims after an evidentiary hearing and plaintiffs filed a motion to reconsider. 99 B.R. at 871. In the original hearing and on reconsideration, plaintiffs argued that the former chairman and chief executive officer ("CEO") of Xonics, Inc. breached his fiduciary duty by leading Xonics, Inc. into a ruinous transaction while it was insolvent. *Id.* at 872. The bankruptcy court ultimately found that an independent board, after full disclosure, approved the transaction in question and that the CEO and the independent board fulfilled their fiduciary duties. *Id.* at 876. Rejecting plaintiffs' arguments for a second time, the bankruptcy court stated,

> This court must be able to rely on officers' and directors' actions, even for an insolvent corporation unless those seeking damages show that such actions are venal. To require less in assessing breach of fiduciary duty on the [plaintiffs'] record in this case would constrain the commercial world in developing means to aid the floundering corporation.

*Id.* at 876. In this case, Plaintiff's claims do not involve the actions of an independent board of directors and Plaintiff need not allege venal or corruptible acts. In short, *In re Xonics* is not helpful in the resolution of the matter now before this Court.

### III. Conclusion

For the reasons stated above, Defendants' motion is granted in part and denied in part. Specifically, Defendants' motion to dismiss Plaintiff's Count V against all Defendants is granted and Defendants' motion to dismiss all remaining counts against Defendant Thompson is denied.

                                                                                    _____
                                                                                    MARTIN C. ASHMAN
Dated: May 24, 2006.                                          United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| BRUCE E. de'MEDICI, Esq. | STEPHEN T. BOBO, Esq. |
| KEITH E. ALLEN, Esq. | MICHELE L. WALTON, Esq. |
| Mandell Menkes, L.L.C. | Sachnoff & Weaver, Ltd. |
| 333 West Wacker Drive | 10 South Wacker Drive |
| Suite 300 | Suite 4000 |
| Chicago, IL 60606 | Chicago, IL 60606 |
| | |
| Attorneys for Plaintiff | Attorneys for Defendants |